BOWEN (WISE v.). See Case No. 17,905.

BOWEN, The JAMES. See Case No. 7,192.

BOWEN, The J. L. See Case No. 7,322.

———

## Case No. 1,726.

### BOWERBANK v. MORRIS.

[Wall. Sr. 118.][1]

Circuit Court, D. Pennsylvania. May 25, 1801.

MARSHALS—REMOVAL — APPOINTMENT OF SUCCESSOR—ACTS BEFORE NOTICE OF APPOINTMENT.

The old marshal is not removed by the appointment of a new one, until he receives notice of such appointment; and all acts done by him before such notice, are good.

[Cited in U. S. v. Bank of Arkansas, Case No. 14,515.]

[See Ex parte Hennen, 13 Pet. [38 U. S.] 230; and see, contra, Overton v. Gorham, Case No. 10,626; U. S. v. Bank of Arkansas, Id. 14,515; also, Stewart v. Hamilton, Id. 13,429.]

In equity. This was a rule, on the motion of Rawle, to show cause why the sales made by John Hall, late marshal of the Pennsylvania district, of certain lands taken in execution, as the property of Robert Morris, the defendant, should not be set aside. The following facts were agreed: On the ——— day of March last, (1801), a commission, as marshal of the eastern district of Pennsylvania, issued to John Shee, who did not accept. On the 28th March, another commission issued to John Smith; this was received and accepted on the 4th April, and notice of it given by John Smith, the new marshal, to John Hall, the old marshal, on the same day. On the 10th day of April, John Smith took the oath of office, and gave security as by

law directed. The sales in question had commenced under a venditioni exponas issued to and received by Hall, prior to the 28th March last, and were adjourned over from day to day; but on each day of adjournment, tracts of land were sold, which had not been exposed to sale the preceding day. Sales were thus made after the 28th March, and before the 4th April; and after the 4th April, and before the 10th April; and after the 10th April. The motion was, to set aside all the sales made after the 28th March.

Rawle, who took the rule, stated that several of the bar would argue on behalf of purchasers at different times, and would affix different periods for the termination of the first marshal's authority. He was to have argued, that the first marshal's authority ceased on the date of the commission to Smith; but on full consideration he was of opinion that the bare appointment and commission, until accepted and notice given to the old marshal, was not a removal so as to avoid the intermediate acts of the old marshal between the date of the last commission and notice of it. He cited the acts of congress relating to the question, and which are noticed in the opinions of the court. He insisted, therefore, that under his rule, all the sales posterior to the 4th April, 1801, ought to be set aside, but that up to that day, they should stand. It might be argued, that the seizure in execution by Hall, being previous to the 28th March, all the sales would relate to that act; and on the principles of the common law in respect to chattels the seizure divested the defendant's property, and though a supersedeas came after seizure, and before sale, the sheriff might proceed. But there was, in the first place, no analogy between a seizure of goods and of lands; and secondly, the act of congress of the 7th May, 1800, has expressly directed that whatever lands are not actually sold by the old marshal before his removal, shall be sold by the new marshal; and the only question that can be raised, is, when was the old marshal removed? I contend, with reference to his official acts, on the 4th April, when he received notice of the appointment and acceptance of his successor. He cited Willes, 280; 4 Term R. 411; 12 Gilb. Ex'ns, 22.

Ingersoll. What we want, is the decision of the court for our direction and security. It is for the interest of my client to contend that all the sales are good under the venditioni to Hall. He seized the lands, and began the sales, prior to the appointment of Smith; and every individual sale under that seizure, let there be ever so many, and continue as long as they will, must relate to the seizure, and form, in legal construction, but one sale of the property. The act of the 7th May, 1800, leaves the doctrine of relation where it was. The lands in this case, under the venditioni, are chattels for the satisfac-

[1] [Reported by John B. Wallace, Esq.]

tion of debts; and the rule of the common law is, that the sale relates to the seizure, &c. The purchaser of a parcel of the land seized by Hall before the 28th March, though he purchased after that, or after the 4th April, or the 10th April, has a right to refer his purchase to the levy, and to say that the seizure and sale make but one act, and relate to the first moment of execution. There seems no inconvenience from this construction, but a great safety and security to purchasers who know nothing of the change of officers, and only look to the executive seizure, and officer who first advertises and then sells.

Dallas. The 1st question is, when was Hall removed from office? I am to contend that he was removed eo instanti that the appointment of the new marshal was complete. This was at the date of the new commission on the 28th March, 1801. The signing the new commission determines the office of the old marshal—he is removed; the pleasure of the president is expressed, and that is the tenure of the marshal. The acceptance of the new marshal and notice are not requisite to the removal of the old one; though Smith had not accepted, yet Hall was out. Surely the president may remove, without appointing a substitute: he may vacate the office; this he does by the new appointment. The purchaser under Hall, after his removal in this way, has no title; the sale is void. As to the inconvenience and injury to purchasers who buy, pay, and take titles without notice, this cannot alter the case; it is casus omissus, and the legislature only can cure it. Where the office expires by its own limitation, which is four years, or the marshal dies, the law transfers the authority, and no inconvenience can result to a purchaser. But on an official removal by the president, the power to act ceases from that instant; the old commission is vacated by the new one, and all acts after the date of the last commission, are, ipso facto, void. 2d. As to the doctrine of relation contended for by Mr. Ingersoll, it cannot be seriously urged. The act of congress of the 7th May, 1800 [2 Stat. 61], expressly enacts, that where a marshal takes land in execution and dies, or his time expires, or he is removed before sale, the land so unsold, shall be sold by the new marshal. All the sales, then, of the defendant's land, after the 28th March, 1801, are void: the marshal was removed then, and the lands being unsold, must go to the new marshal.

E. Tilghman. The period which determines the authority of the old marshal to sell, is notice of his removal. All his acts between the date of the new commission, and notice of it are good. He is not removed, quoad intermediate acts, in legal contemplation, till then. All the sales up to the 4th April, 1801, must stand. Mr. Ingersoll's doctrine of relation founded on the analogy of the common law in cases of goods, will not hold. By seizing of goods, the sheriff has property, may bring an action, may sell and give possession; the interest is divested out of the defendant: but in the case of land in Pennsylvania, he has no interest in rem, or in re, but a bare authority. They are, indeed, as chattels, subject to pay debts, but bear no other resemblance; the sheriff cannot give the purchaser possession. Then comes the act of congress of the 7th May, 1800, which puts an end to the doctrine of relation by enacting, that where the officer is removed, and any lands which he has seized, are unsold, the new marshal shall sell them. The term, sale, is complex: it supposes a vendor and a purchaser. Will any one carry the fiction so far, as to say, that a lot purchased by A. on the 10th March, was sold on the 1st February preceding!

M. Levy. I hold that the old marshal was not removed, until the new marshal was sworn into office, and had given security agreeably to the act of 24th September, 1789 (1 Laws U. S. 65 [1 Stat. 87], § 27), by which it is enacted, "that a marshal shall be appointed for the term of four years, but shall be removable from office at pleasure;" "and, before he enters on the duties of his office, he shall become bound," &c. "and take an oath," &c. Common law, and the common good, dictate the propriety of avoiding a lapse in this office. The execution of all criminal and civil process devolves upon the marshal; and the intention and policy of the legislature, no doubt, was, that the old officer should hold until the new one could act. Until the new one swears in, he is no officer; the term of office granted for the four years by the act to the preceding marshal, not being expired. His office continues till another can do the duty, unless, as has been contended, the commission and notice of it vacates the old office. The words of the act are, that the marshal shall be "removable from office at pleasure;" it does not define a removal from office. A new appointment merely, cannot be, it need not be construed a removal; a notice of it from the officer need not be so taken. It may fairly be construed that the president has removed from office the old marshal, when a complete appointment of a new one capable of doing the duties of the office, has been effected. I enter not upon the case supposed, that the president may vacate the office of a marshal: that is not now the question; nothing appears to manifest any such intention. The office here had not expired by law; and the president meant to continue the officer; and until he actually filled the office with a substitute, he did not remove nor intend to remove the predecessor. The president himself gave no dismission or notice of it to Hall: he sent a commission to Smith, meaning that he should be marshal when he accepted and qualified himself according to law; and until then Smith could not give notice that he was

marshal. It would be a strange exercise of the president's power, and not to be supposed, that he would mean to supersede the first officer and leave a chasm in the office, till it should please the new incumbent to accept, to give notice, to swear, and to give security. Is it to depend on the whim or procrastination of the intended successor, whether the office shall be filled or not! Upon a full consideration of the law and the principles which may with propriety govern this question, I think the true ·point of time at which a removal from office of the old marshal takes place in consequence of the new appointment, is when the person newly appointed becomes an efficient officer; in other words, when the office is filled.

He cited Col. Burr's opinion, in a collection of pamphlets, on the canvass of an election in the state of New York; also, Foot v. Prowse, 1 Strange, 625; 3 Brown, 167.

TILGHMAN, Chief Judge. By the act of congress of the 24th September, 1789 (1 Laws U. S. 67 [1 Stat. 87], § 28), it was provided, "that every marshal or his deputy when removed from office, or when the term of office is expired, shall have power to execute all such precepts as may be in their hands respectively at the time of such removal or expiration of office." If this act had remained in force, it is clear that John Hall might have gone on to sell all the lands mentioned ·in the venditioni exponas; because that would have been an execution of the precept which was in his hands at the time of his removal. But by the act passed the 7th May, 1800 (5 Laws U. S. 145, § 3), it is enacted, "that where a marshal shall take in execution any lands, tenements, or hereditaments, and shall die, or be removed from office, or the term of his commission expire before sale, or other final disposition of the same; in every such case, the like process shall issue to the succeeding marshal, and the same proceedings shall be had, as if such former marshal had not died or been removed, or the term of his commission had not expired." What were the reasons which induced the legislature to make the restrictions of the marshal's power in cases of precepts ordering the sale of lands, it is unnecessary for us to inquire: we are bound by the law as it is written. The intention of the act is plain; if a marshal is removed before he has actually sold the land, he shall not proceed to make the sale, but a new writ shall issue to his successor. But when shall he be said to be removed? A removal from office may be either express, that is, by a notification by order of the president of the United States that an officer is removed; or implied, by the appointment of another person to the same office. But in either case, the removal is not completely effected till notice actually received by the person removed. This construction of the act of the 7th May, 1800, avoids all inconveniences and is warranted by well established principles. In general, all persons who act by authority derived from others, may proceed to execute business until notice of the revocation of their authority; and their acts between the time of revocation of their power, and of their receiving notice of such revocation, are held good; and with regard to a sheriff in particular, it was held in the case of Boucher v. Wiseman, Cro. Eliz. 440, cited in 4 Bac. Abr. 446, that the execution of a fi. fa. by a sheriff after a writ of discharge had issued to remove him from his office, but before notice of such writ of discharge, was good. The marshals in many districts of the United States, live so remote from the seat of government, that a considerable time must elapse before notice can be received: and it cannot be supposed that it was intended to injure bona fide purchasers, who may have paid their money at marshal's sales before it was possible to know the marshal was removed. As to those sales which had not actually taken place when Mr. Hall received notice of Smith's appointment, I am of opinion, they cannot be supported by the doctrine of relation. A sale is a term well understood. When the marshal has struck off the land to the highest bidder, he has made the sale. But if he only puts ·the land up, and then adjourns the sale to some other time, it cannot be said he ·has made the sale. And if he receives notice of his removal before the time adjourned to arrives it would be directly contrary to the provisions of the act of congress, if he were to proceed to make the sale. I am therefore of opinion that all sales made by Mr. Hall, the late marshal, after he received notice of the commission to Mr. Smith, the present marshal, which is stated to have happened on the 4th April last, were contrary to law, and must be set aside.

GRIFFITH, Circuit Judge. The act for establishing the judicial courts of the United States passed the 24th September, 1789, creates the office of a marshal, designates his powers, and fixes the tenure of his commission. By the 27th section (1 [2] Laws U. S. 65 [1 Stat. 87]) it is enacted, "that a marshal shall be appointed, in and for each district for the term of four years, but shall be removable from office at pleasure, whose duty it shall be to attend," &c. "And to execute throughout the district, all lawful precepts," &c. "And before he enters on the duties of his office, he shall become bound for the faithful performance," &c. "and shall take the following oath," &c. By the 28th sec. "In causes where the marshal or his deputy shall be a party, the writs and precepts therein shall be directed to such disinterested person as the court may appoint. And in case of the death of any marshal, his deputy or deputies shall continue in office, unless otherwise specially removed, and

shall execute the same in the name of the deceased, until another marshal shall be appointed and sworn. And every marshal or his deputy when removed from office, or when the term for which the marshal is appointed shall expire, shall have power notwithstanding to execute all such precepts as may be in their hands respectively at the time of such removal or expiration of office." By this act, every marshal is to be appointed for four years, but is removable from office at pleasure; it was provided that the execution of all precepts in his hands at his death, shall be executed by his deputy, until a new marshal is sworn; or if at the expiration of four years, when his office ceases by its own limitation, or at the time of his removal from office, precepts are in his hands, they shall be proceeded upon by himself or his deputy. Had the law remained so, this question now debated, could not have arisen; for a venditioni exponas being a precept within the meaning of the law, the ex-marshal Hall would have been right in making the sales in question.

But for reasons best known to the legislature of the United States, it was enacted on the 7th May, 1800 (5 Laws U. S. 146), "that whenever a marshal shall sell any lands, tenements or hereditaments by virtue of process from a court of the United States, and shall die or be removed from office, or the term of his commission expire before a deed shall be executed for the same by him to the purchaser; in every such case the purchaser may apply to the court," &c. "And where a marshal shall take in execution any lands, tenements, or hereditaments, and shall die, or be removed from office, or the term of his commission expire before sale, or other final disposition made of the same; in every such case, the like process shall issue to the succeeding marshal, and the same proceeding shall be had, as if such former marshal had not died or been removed, or the term of his commission had not expired." The only cases, then, where an old marshal, going out of office by efflux of time or removal, is restrained from proceeding on process in his hands, is, when having taken lands in execution, he has sold and made no deed, or has not sold; in both these cases, the new marshal shall, by order of the court, make a deed, or by new process proceed to sale.

All sales made after Hall was, in law, removed from his office, are void, and must be set aside. The notion of protecting sales actually made after a removal, by giving them a fictitious relation to the time of seizure or taking them in execution by the marshal, would defeat the very terms and evident intention of the law. Nothing can be plainer, than that the unsold lands are to be sold by a new writ, and by the new marshal. It can make no difference that, as in this case, the sales are begun; each sale on the adjourned days, though under the same execution or authority, is a distinct sale, at a different time, of a different property, and, it may be, to a different purchaser, and for a different price. It is, therefore, quite absurd to maintain that a sale made on the 4th April to A., was made to A. on the 27th of February. The act of congress speaks of sales, and I do not see how the common law doctrine of relation is at all brought in. If a sheriff seizes goods in execution, and afterwards a supersedeas comes, he may proceed, for an execution once begun shall proceed, as the expression is in the case cited from 4 Term R. 411, 412. But why? Because the supersedeas is too late; the property was divested from the debtor; it is in the officer; the sheriff has authority to sell. But in this case a previous law says, that where he has taken property in execution, and is removed before sale, he shall not sell, but the new marshal proceed with the execution.

The only question, then, is, "At what time was John Hall removed from his office." The expiration of the office by death, or limitation of the term, or a direct notice of dismission, are certain events; but removal by the pleasure of the president, effected merely by a new appointment, necessarily refers to some act or acts to be performed by the person having the power of appointment and removal. There can be no question, I apprehend, but that the president may, by a proper act of office, remove a marshal, without a new appointment. But this would not supersede him until he had notice of such declaration of the president's pleasure, and only from the time of notice; the office then would be vacant. That is not the kind of removal in this case. The removal here is effected by a new appointment; or, as his honour the chief judge observes, it is an implied removal by the commissioning another to the office. The president does not remove the old marshal by a discharge, and then proceed to make a new appointment, but he leaves the old marshal to proceed in the duties of his office, until certain acts are done relative to a new one, which amount to a removal. What are these? 1st. He nominates a new one to the senate, and the senate concur. Did he stop there, no one would say the old officer was removed: he may or may not appoint the other. 2d. He signs a commission for the new officer. Did he keep this in his pocket, no one will say that the old marshal is removed: the very withholding it is an expression of his pleasure for so long, that the new one shall not take, and the old one continue. 3d. He delivers the commission or patent to the new officer. If he refuses it, or sends it back, there is no new appointment, no officer. It has not been contended, that the commission to Shee, which he refused, superseded Hall. 4th. The new commission must be accepted and shown to the old marshal, or other notice of it given to him, before he can be said to

be removed from his office by the will or pleasure of the president. There is then a new patentee, and a proper discharge of the old marshal. I do not go the length of saying the new marshal must be sworn in, (though Mr. Levy's argument was very strong,) but he must accept and give notice by showing his commission or otherwise, to his predecessor; and from that time he must be considered as the officer, though before he "enters on the duties of his office," he must be sworn in. In the case of an implied removal, by the appointment and acceptance of another, nothing is more reasonable, than that all acts done by the predecessor before notice of his removal should be valid; or in other words, that until such notice, the removal of the principal is not complete. The reasons assigned by his honor the chief judge are very strong.

This case is not to be distinguished from other cases of revocable authority. The president, by the commission to Hall, gave him authority to do all acts as marshal until he revoked that authority. Now it is settled law, that "where a man makes an actual revocation of an authority, and, before notice, the other executes his authority, the revocation being without notice, is no revocation" (16 Vin. Abr. 4, pl. 7; Vivion v. Wild, 2 Brownl. 291), as where an arbitrator makes award before notice, though after the countermand, the award is good: or the attorney in fact makes livery on a feoffment after countermand, but before notice, the estate passes. By the demise of the king, at common law all commissions were at an end, yet in the case of Crew v. Vernon, Cro. Car. 97, where a commission had issued to examine witnesses, and the commissioners began the examination the day after the demise of the king, it was held, that all the depositions taken before notice of the demise to the commissioners, should stand; though it was allowed in that case, that the demise of the king determined the commission, and it was said, that if the demise before notice, were to avoid acts done under commissions from the crown, then many trials at nisi prius and attainders upon gaol deliveries after the demise would be avoided, which, it was agreed, were good before notice. Defendant in assize pleaded recovery before commissioners: plaintiff replied, that after the said commission, and before judgment given by those commissioners, another commission issued: and judgment was given for the defendant, the plaintiff not having alleged that the first commissioners had notice before; for the second commission to some purposes has relation to the date, yet acts done under the first commission before notice, are good: so adjudged 34 Ass. pl. 8. An attachment was issued before the demise of Charles II., but executed three days after, without notice; the return, however, of cepi corpus was made after notice, and then proceedings for the contempt: yet because the service was before notice of the demise; that, and the return and all subsequent proceedings were held good. Burch v. Maypowder, 1 Vern. 400. A commission was granted to examine witnesses at Algiers; the plaintiff died before execution of the commission, by which the suit abated, and of course the commission was at an end; yet the depositions being taken by the commissioners before notice of the death, they stood. Thompson's Case, 3 P. Wms. 194.

There are determinations on this very question upon the office of sheriff of England. Sheriffs there are nominated by the chancellor, and other great officers, to the king, who, if he approves, appoints one for the county, and issues a patent or commission: but it has ever been held, that notwithstanding the new appointment and patent made out, yet the office of the old one continues until a discharge or notice of the new patent is given to him; and this, not upon any statutable provision, but upon a lawful construction of what amounts to a removal of the old officer, and when, to the purposes of avoiding his acts, he is removed by the appointment of a new one. "False imprisonment was brought against St. John; he pleaded, that at the time, he was sheriff of Wiltshire, and took the plaintiff by a capias. The plaintiff replied, that one Earnley was sheriff, and traversed that St. John was sheriff; the defendant rejoined that he was sheriff all the year before, and had no notice of the patent to Earnley, and had received no discharge of himself; and on demurrer, the defendant had judgment, because all acts which he hath done as sheriff, are good in law till he has received his discharge, or has perfect notice of the new sheriff. Mo. 186, pl. 338. St. John's Case, cited 19 Vin. Abr. 451, pl. 3." In Westby's Case, 3 Coke, 71, the ancient sheriff is not discharged till three things are done, viz. the patent to the new sheriff, the writ of discharge, which is notice to the old sheriff, and the delivery of the prisoners, &c. The case cited by his honour, the chief judge, Boucher v. Wiseman, Cro. Eliz. 440, was this: Action on the case against Wiseman, because the plaintiff had recovered £100 against Pynder, and the defendant, as sheriff, levied £28 by fieri facias, and had not returned the writ or paid the money. Plea, not guilty. On evidence to the jury, it was proved that the writ was delivered the 9th November to Cowell, his undersheriff, and the same day he made execution, but the defendant, the sheriff, proved that a writ of discharge was delivered to him the same day, dated the 6th November. But because he did not prove that he had notice of this writ of discharge before the execution served, the court held clearly that he was yet sheriff, and chargeable to the plaintiff's action. "A ca. sa. was awarded to Clifton, then sheriff: a new patent was made to Kircombe, and before notice, Clifton arrested A., and left him in execution. Kir-

combe died, and then Fitz was made sheriff, who let A. go. The question was, if this was a good arrest by Clifton? for if not, then it was no escape. The court held clearly, that the arrest was good, and it was an escape; for Sir J. Clifton remained sheriff until the new patent is showed to him, so as he may have notice of his discharge; and if, in the meantime between the sealing of the new patent and the showing it to him, he keeps a county court, it is good." Fitz's Case, Cro. Eliz. 12.

The true time, then, of the "removal of a marshal by the pleasure of the president," where the removal is not by a direct discharge, or vacating of the office; but merely by the operation of a new commission or appointment, is when notice is given to the old marshal of the new commission by the president, or the showing of the commission to him by the officer, or other perfect notice. In the case stated, it is agreed that Hall had notice of the new commission and acceptance by Smith on the 4th April last. I agree, therefore, with his honor, the chief judge, that all sales by Hall previous to the notice are valid; but all sales after that day are void, and a new writ of sale must issue to the new marshal, Smith.

Rule made absolute to set aside all the sales made by Hall after the 4th April, 1801.

BASSET, Circuit Judge, absent.